UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY ANTHONY,

                        Plaintiff,

         -against-                                 1:14-cv-1416 (LEK/CFH)

NORTHWESTERN MUTUAL LIFE
INSURANCE CO., *et al.*,

                        Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff Mary Anthony ("Plaintiff") commenced this action on November 21, 2014, asserting claims for retaliation, pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), 18 U.S.C. § 1514A, and breach of contract, relating to the termination of her employment by Defendants. Dkt. No. 1 ("Complaint"). Presently before the Court are Motions to dismiss filed by Defendants Northwestern Mutual Life Insurance Company, Northwestern Mutual Investment Services, LLC, Northwestern Mutual Wealth Management Company (together, the "Northwestern Defendants") and by Defendants Alexander J. Tronco ("Tronco") and the Tronco Financial Group ("Tronco Financial") (together, the "Tronco Defendants") (collectively, "Defendants"). Dkt. Nos. 5 ("Northwestern Motion"); 5-1 ("Northwestern Memorandum"); 6 ("Tronco Motion"); 6-2 ("Tronco Memorandum"). For the following reasons, Defendants' Motions to dismiss are granted.

## II.   BACKGROUND[1]

Plaintiff was an employee of Tronco Financial for a period of twenty-five years. Compl. ¶ 26. Tronco Financial's principal place of business is in Albany County, New York; the office Plaintiff worked at is located in Latham, New York. Id. ¶¶ 11, 30. Defendant Tronco was the managing partner of the Latham office. Id. ¶ 30. Tronco Financial acted as a contractor for the Northwestern Defendants.[2] Id. ¶ 24. The Northwestern Defendants "provide investment advisory services and the marketing, offer and sale of publically traded securities and mutual funds." Id. ¶ 20. The Northwestern Defendants market and sell at least twenty-seven different publicly traded mutual funds (the "Northwestern Mutual Funds"). Id. ¶ 21. The Northwestern Mutual Funds are required to file reports under § 15(d) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78o(d). Id. ¶ 22. The Northwestern Mutual Funds are sold and marketed through various agents and contractors, including Tronco Financial. Id. ¶¶ 23-24.

In addition to marketing and selling the Northwestern Mutual Funds, Tronco Financial "provided compliance services to ensure that the marketing and sale of the [Northwestern Mutual Funds] complied with all State and Federal Securities law, and the rules and regulations of the Securities and Exchange Commission." Id. ¶ 25. In particular, Plaintiff's responsibilities—her last position with Tronco Financial was "Director of Network Office Supervision," id. ¶ 26—required

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. See Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (noting that, in addressing a motion to dismiss pursuant to 12(b)(6), "[a] court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff").

[2] Defendants Northwestern Mutual Investment Services, LLC and Northwestern Mutual Wealth Management Company are wholly owned subsidiaries of Defendant Northwestern Mutual Life Insurance Company. Compl. ¶¶ 7-9.

her "to ensure that all financial representatives, associates and staff maintained compliance with ethical business practices; and the rules, regulations, policies, and procedures of the Defendants' regulatory bodies and governmental agencies, including the Securities and Exchange Commission [("SEC")] and FINRA, and State and Federal Securities Laws." Id. ¶ 27.

Beginning in the summer of 2012, Plaintiff brought numerous compliance issues regarding the conduct of Tronco Financial representatives to the attention of Tronco. Id. ¶¶ 33, 35. Plaintiff believed these issues represented violations of SEC rules and regulations. Id. ¶ 35. Conduct reported by Plaintiff included representatives accepting trades and soliciting sales without being properly registered or qualified, representatives maintaining pre-completed paperwork, a representative making trades on a client account without speaking to the client, an assistant accepting trades on behalf of a representative, and use of unapproved marketing materials and advertising. Id.

Plaintiff had "ongoing and continuous communications" with Tronco concerning non-compliant practices by Tronco Financial representatives, but no action was taken. Id. ¶ 36. Plaintiff also reported these practices to the Northwestern Defendants. Id. Tronco expressed frustration with Plaintiff reporting these practices. Id. ¶ 37. On February 6, 2013, Plaintiff was verbally terminated by Tronco, who allegedly admitted that the termination was due to Plaintiff's persistence in reporting non-compliant practices. Id. ¶ 38. Plaintiff had an employment contract with Tronco Financial, which provided that, without cause, the contract could be terminated only upon thirty days' written notice. See id. ¶¶ 52-56; Dkt. No. 1-1 ("Exhibits") at 2. Plaintiff was not provided with thirty days' written notice of her termination. Compl. ¶ 39-40.

Plaintiff commenced the present action on November 21, 2014.[3]  See id.  Plaintiff asserts two causes of action.  First, Plaintiff alleges that her termination was retaliatory under 18 U.S.C. § 1514A for reporting violations of SEC rules and regulations, and federal and state securities law.  Id. ¶ 50.  Second, Plaintiff alleges that her termination was in breach of her employment contract.  Id. ¶ 57.  Plaintiff seeks damages.  Id. ¶ 59.

### III.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### IV.  DISCUSSION

Defendants move to dismiss Plaintiff's § 1514A claim because she has not pled that any of the Defendants are publicly traded companies covered by the provision.  Northwestern Mem. at 1-2;

---

[3] On July 12, 2013, Plaintiff filed a complaint regarding her termination with the Occupational Safety and Health Administration ("OSHA").  Compl. ¶ 17.  OSHA did not issue a final decision on Plaintiff's complaint within 180 days of its filing.  Id. ¶ 18.

4

Tronco Mem. at 3-4. The Northwestern Defendants further argue that Plaintiff has not pled that she engaged in protected conduct under § 1514A. Northwestern Mem. at 13-15.[4] Defendants also argue that the Court should dismiss Plaintiff's breach of contract claim. Northwestern Mem. at 15-17; Tronco Mem. at 9-11.

### A. Section 1514A

Section 1514A of Sarbanes-Oxley creates whistleblower protection for employees of publicly traded companies, as follows:

> [n]o company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)) including . . . any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee . . . to provide information, cause information to be provided or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission . . .

18 U.S.C. 1514A(a). Thus, a company is covered by § 1514A where it: (1) has issued securities that are registered under section 12 of the Exchange Act; or (2) is required to file reports under section 15(d) of the Exchange Act. 18 U.S.C. § 1514A(a). In the present case, Plaintiff does not allege that any of the Defendants are publicly traded entities within the meaning of § 1514A. See Compl. ¶¶ 7-9, 11-12. The Complaint refers to Defendants as "broker-dealer[s]" subject to SEC rules and regulations. Id. ¶ 29. The Complaint does not allege that Defendants have issued publicly traded securities registered under section 12 of the Exchange Act or that Defendants are required to file

---

[4] Plaintiff argues that she did plead that she engaged in protected activity, Dkt. No. 14 ("Opposition") at 13-17, but in the event the Court finds otherwise, requests that she be granted leave to amend her Complaint, id. at 18-19; see also Dkt. No. 15.

5

reports under section 15(d) of the Exchange Act.

However, § 1514A also prohibits retaliation by "any . . . contractor, subcontractor, or agent" of a company registered under section 12 or required to file reports under section 15(d) of the Exchange Act. 18 U.S.C. § 1514A(a). The Supreme Court, in Lawson v. FMR LLC, 134 S. Ct. 1158 (2014), held that this language means that § 1514A "shelters employees of private contractors and subcontractors, just as it shelters employees of the public company served by the contractors and subcontractors." Id. at 1161.

In the present case, Plaintiff alleges that the Northwestern Mutual Funds are required to file reports under § 15(d) of the Exchange Act, Compl. ¶ 22, and that Defendants are contractors or subcontractors of the Northwestern Mutual Funds, id. ¶ 44. Plaintiff accordingly argues that she was employed by a contractor that provided services to entities that are within the scope of § 1514A, and, as such, is subject to the provision's protections under Lawson. Opp'n at 7-10. Defendants argue that Plaintiff's allegations do not place her among the contractor employees that Lawson recognized as protected under § 1514A. Northwestern Mem. at 7-13; Tronco Mem. at 7-9. Section 1514A's coverage of employees of private contractors under Lawson is an apparent issue of first impression in the Second Circuit.

   1. *Lawson v. FMR LLC*

The Lawson plaintiffs were two former employees of private companies that provided advisory and management services to Fidelity mutual funds. 134 S. Ct. at 1164. The Fidelity funds had no employees themselves, but instead contracted with private investment advisors to handle all of their operations, including making investment decisions, preparing reports for shareholders, and filing reports with the SEC. Id. This is a common structure in the mutual fund industry. Id. Both

6

plaintiffs suffered adverse employment actions when they raised concerns regarding compliance issues with the funds.  Id.  One employee reported that certain accounting methodologies overstated expenses for operating the funds; the other reported concerns regarding inaccuracies in an SEC draft registration statement.  Id.  The plaintiffs commenced suit under § 1514A.  Id.  The defendant companies argued that § 1514A only protected employees of public companies, and therefore had no application to them, as privately held companies.  Id.  The Supreme Court held, "based on the text of § 1514A, the mischief to which Congress was responding, and earlier legislation Congress drew upon, that the provision shelters employees of private contractors and subcontractors, just as it shelters employees of the public company served by the contractors and subcontractors."  Id. at 1161.

The Supreme Court stated the relevant text of § 1514A as follows: "no . . . contractor . . . may discharge . . . an employee."  Id. at 1165.  In that context, the Court found that "[t]he ordinary meaning of 'an employee' . . . is the contractor's own employee."  Id.  The Court rejected the defendant companies' proposed interpretation that "an employee" only refers to employees of the public company because the statutory structure suggested that the prohibited retaliatory measures "are commonly actions an employer takes against its *own* employees."  Id. at 1166.  Furthermore, "[c]ontractors are not ordinarily positioned to take adverse actions against employees of the public company with whom they contract."  Id.  Thus, the Court concluded that the most logical reading of § 1514A prohibited contractors from taking retaliatory measures against their own employees.

The Court next noted that extending § 1514A's protections to employees of contractors was consistent with the purposes of Sarbanes-Oxley.  Id. at 1169.  The Court observed that "[i]t is common ground that Congress installed whistleblower protection in the Sarbanes-Oxley Act as one

7

means to ward off another Enron debacle." Id. (citing S. Rep. No. 107-146 at 2-11 (2002)). There was "abundant evidence that Enron succeeded in perpetuating its massive shareholder fraud in large part due to a 'corporate code of silence.'" Id. at 1162. Employees who "attempted to report corporate misconduct . . . faced retaliation, including discharge." Id. "The lack of whistleblower protection [was] 'a significant deficiency' in the law, for in complex securities fraud investigations, employees 'are [often] the only firsthand witnesses to the fraud.'" Id. at 1162-63 (quoting S. Rep. No. 107-146 at 10).

Significantly, "contractors and subcontractors, including the accounting firm Arthur Andersen, participated in Enron's fraud and its coverup." Id. at 1162. The legislative history demonstrated to the Court that "Congress was as focused on the role of Enron's outside contractors in facilitating the fraud as it was on the actions of Enron's own officers." Id. at 1169. Congress understood "that outside professionals bear significant responsibility for reporting fraud by the public companies with whom they contract, and that the fear of retaliation was the primary deterrent to such reporting by the employees of Enron's contractors." Id. at 1170. The Court therefore could "safely conclude that Congress enacted § 1514A aiming to encourage whistleblowing by contractor employees who suspect fraud involving the public companies with whom they work." Id.

The Court further noted that its reading of § 1514A was essential to avoid a "huge hole" in the coverage of § 1514A; otherwise contractors' employees "would be vulnerable to retaliation by their employers for blowing the whistle on a scheme to defraud the public company's investors, even a scheme engineered entirely by the contractor." Id. at 1168. This gap in coverage was particularly significant for the mutual fund industry which is structured so that "[v]irtually all mutual funds . . . have no employees of their own . . . [and] are managed, instead by independent

8

investment advisers." Id. at 1171.

A plurality of the Court responded to concerns that its reading would extend whistleblower protection to all employees of private contractors, including those who had "no exposure to investor-related activities and thus could not possibly assist in detecting investor fraud." Id. at 1172. While finding these concerns exaggerated, the plurality cited with approval "various limiting principles," identified by the United States as *amicus curiae*, that might resolve overbreadth problems. Id. at 1172-73.[5] First, "contractor" is limited to business relationships where "performance of a contract will take place over a significant period of time." Id. at 1173. Second, § 1514A "protects contractor employees only to the extent that their whistleblowing relates to 'the contractor . . . fulfilling its role as a contractor for the public company, not the contractor in some other capacity.'" Id.; see also id. ("[I]t has to be a person who is in a position to detect and report the types of fraud and securities violations that are included in the statute."). However, the plurality did not determine the bounds of those principles because the plaintiffs were only seeking a "mainstream application" of § 1514A, where the "alleged fraud directly implicate[d] the funds' shareholders." Id.

   *2. Analysis*

Plaintiff's allegations require the Court to determine the boundaries of the Supreme Court's holding in Lawson. Plaintiff argues that she "alleged that she worked for a contractor that provided

---

[5] Justice Ginsburg delivered the majority opinion, joined by Chief Justice Roberts, and Justices Breyer and Kagan, and joined in principal part by Justices Scalia and Thomas. Justice Scalia filed an opinion concurring in principal part and concurring in the judgment, joined by Justice Thomas. Justice Scalia did not agree that § 1514A's coverage of contractor employees was subject to limiting principles. 134 S. Ct. at 1177. Justice Scalia stated that although the Government's limiting principles may have been good policy, they had "no basis whatsoever in the statute's text." Id. Justice Sotomayor filed a dissent, joined by Justices Kennedy and Alito.

9

compliance services on behalf of the [Northwestern Mutual Funds]," and is accordingly within the scope of § 1514A. Opp'n at 7. Defendants argue that Plaintiff is not covered by § 1514A, as interpreted by Lawson, because she does not allege that she provided services to the Northwestern Mutual Funds, or that she reported wrongdoing committed either by the Funds or on their behalf. For the following reasons, the Court agrees with Defendants.

In order to determine the scope of § 1514A's coverage of contractor employees, the Court begins with the examples discussed in Lawson. The Lawson Court found significant evidence for its interpretation of § 1514A in the Enron scandal and the role of accounting and law firms in facilitating it. See Lawson, 134 S. Ct. at 1169. Because accounting and law firms were integral in the scandal, and Congress found that "fear of retaliation" deterred their employees from reporting fraudulent practices, the Lawson Court concluded that Congress intended § 1514A to cover accountants, lawyers, and other outside professionals who are involved in a company's business operations and thus positioned to be firsthand witnesses to corporate fraud. Id. at 1170. The Lawson plaintiffs similarly alleged a "mainstream" case of § 1514A. Id. at 1173. The investment advisory firms that employed the plaintiffs handled all day-to-day operations of the Fidelity mutual funds and therefore, the employees of those firms were positioned to be firsthand witnesses to shareholder fraud. Id. at 1164. Each of the plaintiffs alleged retaliation for reporting practices that directly implicated the mutual funds' shareholders. Id. at 1173.

Conversely, in Gibney v. Evolution Mktg. Research, LLC, 25 F. Supp. 3d 741 (E.D. Pa. 2014), the court, in considering a § 1514A action, found that a contractor employee was not within the scope of the provision. In Gibney, the plaintiff was terminated from his employment with a private contractor when he reported that the contractor was overbilling a publicly-traded company.

10

25 F. Supp. 3d at 742. The plaintiff brought an action under § 1514A, asserting that "as an employee of a contractor to a publicly-traded company . . . his activities were protected under § 1514A." Id. at 744. The Gibney court found it a "close question" whether the allegations fell within the scope of § 1514A, because if a contractor defrauds a public company, it necessarily defrauds the public company's shareholders. Id. at 747. The plaintiff's action then touched the central purpose of Sarbanes-Oxley, protecting shareholders. Id. Nonetheless, the court found that it would be "impermissibly broad," id., to interpret § 1514A to encompass every action "that has some attenuated, negative effect on the revenue of a publicly-traded company," id. at 748. Sarbanes-Oxley was specifically intended to prevent shareholder fraud "either by the public company itself or *through* its contractors," whereas the plaintiff alleged fraud committed *against* a public company. Id. at 747-48.

Analyzing the facts of Lawson, Gibney, and the Enron scandal, the Court concludes that there are two main limitations on the scope of § 1514A. First, the whistleblowing must relate to the contractor's provision of services to the public company. See Lawson, 134 S. Ct. at 1173. Thus, § 1514A only covers contractors insofar as they are firsthand witnesses to corporate fraud at a public company—for example, the lawyers and accountants in the Enron scandal who facilitated and contributed to the fraud. It does not cover contractor employees who experience retaliation that is unrelated to the provision of services to a public company. The second limitation is that § 1514A is concerned with public company fraud, whether committed by the public company itself or through its contractors. Gibney, 25 F. Supp. 3d at 747; see also Lawson, 134 S. Ct. at 1173 ("[T]he contractor . . . fulfilling its role as a contractor for the public company, *not the contractor in some other capacity*." (emphasis added)). A private company's fraudulent practices do not become

11

subject to § 1514A merely because that company incidentally has a contract with a public company. See Fleszar v. U.S. Dep't of Labor, 598 F.3d 912, 915 (7th Cir. 2010) ("Nothing in § 1514A implies that, if [a privately held company] buys a box of rubber bands from Wal-Mart, a company with traded securities, the [privately held company] becomes covered by § 1514A."). The effect of these limitations is to restrict § 1514A to situations where a contractor employee is functionally acting as an employee of a public company, and in that capacity, is a witness to fraud by the public company.

Under these limiting principles, Plaintiff's allegations fail to state a claim under § 1514A because she has neither alleged that she was providing services to the Northwestern Mutual Funds, nor that she reported any wrongdoing committed either by the Mutual Funds or on their behalf.

Plaintiff's allegations appear superficially similar to the Lawson plaintiffs' allegations insofar as they also involve the unique structure of the mutual fund industry. However, unlike the Lawson plaintiffs, who were providing advisory and management services directly to mutual funds, Plaintiff nowhere alleges that she was providing services to the Northwestern Mutual Funds. Plaintiff alleges that she was Director of Network Office Supervision, Compl. ¶ 26, and was responsible for ensuring that Tronco Financial representatives and staff complied with applicable rules and regulations, including federal securities law, id. ¶ 27. Plaintiff further alleges that she "provided on behalf of [the Northwestern Defendants'] publically traded securities, compliance services, ensuring that all marketing, offered and sales were in compliance with all Federal Securities Laws and SEC rules and regulations." Id. ¶ 45. Plaintiff's allegations fall short because they do not plausibly suggest that Plaintiff provided services *to* the Northwestern Mutual Funds. While Plaintiff states that she provided compliance services "on behalf of" the Mutual Funds, id. ¶ 45, the Complaint clearly pleads that she was responsible for ensuring that Tronco Financial

representatives and associates complied with their legal obligations, id. ¶ 27. Plaintiff does not plead that she ensured that the Mutual Funds complied with their legal obligations. Thus, Plaintiff was not providing services *to* the Mutual Funds. Rather, Plaintiff and her employer, Tronco Financial, provided services to clients—individuals and entities purchasing the mutual funds and securities offered and sold by the Northwestern Defendants. Id. ¶ 25; see also Exs. at 5 (stating that Plaintiff would assist Northwestern Defendants "in offering advisory services and products to clients").[6] Plaintiff therefore was not in a position to be a firsthand witness to shareholder fraud by the Northwestern Mutual Funds, as the investment advisors in Lawson were. The Court agrees with the Northwestern Defendants that finding Plaintiff's claims cognizable under § 1514A would be to expand its coverage to "any situation where any private company sells products or services issued by any publicly traded company." Dkt. No. 17 ("Northwestern Reply") at 8.

Plaintiff also fails to state a claim under § 1514A because she does not allege that she reported any wrongdoing by the Northwestern Mutual Funds. Plaintiff pleads that she reported violations by Tronco Financial representatives. Compl. ¶ 35. However, there is no allegation of wrongdoing by the Mutual Funds for the reasons described *supra*: because neither Plaintiff nor Tronco Financial were providing services to the Mutual Funds, there was no possibility for the Mutual Funds to be acting either through Plaintiff or Tronco Financial. The compliance issues raised by Plaintiff only implicated Tronco Financial, a private company. Although Plaintiff alleges that she provided services "on behalf of" the Mutual Funds, id. ¶ 45, like Gibney, the case "does not

---

[6] Plaintiff pleads that Northwestern Mutual Investment Services, LLC is a registered broker-dealer and investment advisor, Compl. ¶ 8, but does not plead that it provided management or advisory services to any mutual funds. Moreover, neither Plaintiff nor Tronco Financial provided management or advisory services to any mutual funds.

13

implicate the peculiar structure of the mutual fund industry," because Plaintiff was not providing services *to* the Mutual Funds, 25 F. Supp. 3d at 747.

In summary, the Court finds that Plaintiff's allegations do not state a claim under § 1514A.[7] Plaintiff has not alleged that she provided services to the Mutual Funds, nor has she alleged any wrongdoing either by the Mutual Funds themselves or committed through their contractors. Accordingly, Plaintiff's § 1514A claim against Defendants is dismissed.

### B. Breach of Contract Claim

Having dismissed Plaintiff's § 1514A claim, the Court no longer has subject-matter jurisdiction over Plaintiff's remaining breach of contract claim. A federal district court has supplemental jurisdiction over all state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Because Plaintiff's federal claims have been dismissed at this early stage of the action, the Court declines to exercise supplemental jurisdiction over Plaintiff's breach of contract claim and it is accordingly dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

---

[7] The Court need not address the Northwestern Defendants' argument that Plaintiff failed to plead a protected activity. Northwestern Mem. at 13-15. Plaintiff's request to amend her Complaint is accordingly denied as moot. Opp'n at 18-19; Dkt. No. 15.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants Northwestern Mutual Investment Services, LLC, Northwestern Mutual Wealth Management Company, and Northwestern Mutual Life Insurance Company's Motion (Dkt. No. 5) to dismiss is **GRANTED** with respect to Plaintiff's retaliation claim under 18 U.S.C. § 1514A; and it is further

**ORDERED**, that Defendants Tronco Financial Group and Alexander J. Tronco's Motion (Dkt. No. 6) to dismiss is **GRANTED** with respect to Plaintiff's retaliation claim under 18 U.S.C. § 1514A; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 15) to amend her Complaint is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's state law breach of contract claim is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 08, 2015
           Albany, NY

_/s/ Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge